UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ARANTZA ESPINOZA,   CASE NO.

    Plaintiff,

vs.

KERING AMERICAS, INC.,
A Foreign For Profit Corporation
d/b/a ALEXANDER McQUEEN,

    Defendant,
_____/

**COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND**

Plaintiff, ARANTZA ESPINOZA, through undersigned counsel, sues Defendant, Kering Americas, Inc., a Foreign For Profit Corporation d/b/a Alexander McQueen (hereinafter referred to as "Alexander McQueen"), for declaratory and injunctive relief, and damages, and alleges as follows:

1) This action is brought under Title III of the Americans With Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

2) This action is also brought pursuant to 28 C.F.R. Part 36.

3) This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

4) Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

5) Plaintiff is sui juris, and she is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

6)      Defendant, Alexander McQueen is a foreign limited liability company authorized to do business and doing business in the State of Florida.

7)      Defendant, Alexander McQueen is a company that sells men's and women's clothing, bags, shoes, accessories, sunglasses, and fragrances. There is a retail location in Miami-Dade County.

8)      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9)      Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase an engineered ribbed knit dress and a ruffle knit dress.

10)     Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer. The computer is Plaintiff's personal property, and a claim for trespass attached to same.

11)     The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

12)     The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

13)     Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

14)     Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

15)     At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision.

16)     Plaintiff's visual impairment interferes with her day-to-day activities and causes limitations in visualizing their environment. As such, Plaintiff is a member of a protected class

under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

17) Plaintiff regularly uses the computer, but she needs the assistance of special software for visually impaired persons. The software that she uses is screen reader software that is readily available commercially.

18) Defendant is a private entity which owns and operates retail locations. The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

19) Defendant's website is a place of public accommodation per 42 U.S.C. Section 12181(7)(E) because it's an extension of Defendant's brick and mortar stores. The public is able to, among other things, view the products available at defendant's locations, purchase clothing, bags, shoes, accessories, sunglasses, and fragrances through defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, start a live online chat with a client advisor, and learn the story behind Defendant's brand, advertising campaigns, and fashion shows.

20) Since the Defendant's website is a public accommodation, it must comply with the requirements of the ADA. The website cannot discriminate against individuals with disabilities.

21) Plaintiff is a customer of Defendant who is and was interested in purchasing dresses through Defendant's website and at Defendant's stores and visiting Defendant's brick and mortar locations.

22) Plaintiff is not able to visit the physical locations without the assistance of a family member or caretaker, so the ability to purchase merchandise on Defendant's website for delivery to her home is important to her as an alternative when she is not able to visit the Defendant's stores.

23) The website also services Defendant's physical stores by providing information on its brand, sales campaigns, fashion shows, and other information that Defendant is interested in communicating to its customers about its physical locations.

24) Since the website allows the public the ability to view the products available at defendant's locations, purchase clothing, bags, shoes, accessories, sunglasses, and fragrances through defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, start a live online chat with a client advisor, and learn the story behind Defendant's brand, advertising campaigns, and fashion shows, the website is an extension of, and gateway to, Defendant's physical stores. By this nexus, the website is characterized as an intangible service, privilege and advantage provided by a place of public accommodation as defined under the ADA, and thus an extension of the services, privileges and advantages made available to the general public by Defendant through its retail brick and mortar stores.

25) Because the public can view and purchase Defendant's merchandise that is also offered for sale by Defendant at its physical stores, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, start a live online chat with a client advisor, and learn the story behind Defendant's brand, advertising campaigns, and fashion shows, the website is an extension of and gateway to the physical stores, which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). As such, the website, as an intangible service, privilege and advantage of Defendant's brick and mortar locations, must be fully accessible and in compliance with the ADA, must not discriminate against individuals with disabilities, and must not deny full

and equal enjoyment of the same services, privileges and advantages afforded to the general public both online and at the physical locations.

26) At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://www.alexandermcqueen.com/us. Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, and Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA.

27) Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize, Defendant's physical stores, and purchase Defendant's merchandise, sign up for Defendant's newsletter and create an account through the website and at Defendant's physical stores.

28) The opportunity to shop Defendant's merchandise from her home is an important accommodation for Plaintiff because traveling outside of the home as a visually disabled individual is often a difficult, hazardous, frustrating, confusing, and frightening experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

29) Like most consumers, Plaintiff accesses numerous websites at a time to compare merchandise and prices. Plaintiff may look at several dozens of sites to compare features and prices.

30) During the months of January of 2020, Plaintiff attempted on several occasions to utilize the website to browse through the merchandise to educate herself as to the merchandise and with the intent to make a purchase through the website or at one of Defendant's physical stores.

31) Places of public accommodation are not just brick-and-mortar structures. The United States Department of Justice and the binding case law increasingly recognize that private entities are providing goods and services to the public through websites that operate as places of public accommodation under Title III.

32) Defendant is required to make reasonable accommodations to its websites for individuals with disabilities to allow them to participate in web-based promotions and obtain goods or services via the Internet just as sighted persons are able to do.

33) Plaintiff utilized Chrome Vox ("Screen Reader Software") to attempt to purchase clothing on Defendant's website. However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

34) A person who can see can enjoy the benefits and privileges provided by Defendant's website that include, but are not limited to viewing the products available at defendant's locations, purchasing clothing, bags, shoes, accessories, sunglasses, and fragrances through defendant's website, subscribing to Defendant's newsletter, creating an account and registering to track orders, creating a wish list, starting a live online chat with a client advisor, and learning the story behind Defendant's brand, advertising campaigns, and fashion shows.

35) A person who cannot see, like the Plaintiff in this case, cannot go to Defendant's website and avail themselves of the same privileges. Thus, the Plaintiff has suffered discrimination due to Defendant's failure to provide a reasonable accommodation for Plaintiff's disability.

36) The Department of Justice has provided useful guidance regarding website accessibility under the ADA, and the binding and persuasive case law in this district has applied the Web Content Accessibility Guidelines ("WCAG") 2.0 or 2.1 to determine accessibility.

37) Defendant's website does in fact fail the following WCAG 2.0-AA Compliance standards and it does not provide sufficient alternatives to serve the equivalent purpose:

>Applicable WCAG 2.0 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).
>
>Nature of the Violation: required by WCAG 2.0's Standard 3.3.2 Labels or Instructions.·
>
>Applicable WCAG 2.0 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).
>
>Nature of the Violation: required by WCAG 2.0's Standard 3.3.2 Labels or Instructions.
>
>Applicable WCAG 2.0 Standard at Issue: Standard 2.2.1 Timing Adjustable (Level A).
>
>Nature of the Violation: required by WCAG 2.0's Standard 2.2.1 Timing Adjustable.
>
>· Applicable WCAG 2.0 Standard at Issue: Standard 2.1.1 Keyboard (Level A).
>
>Nature of the Violation: required by WCAG 2.0's Standard 2.1.1 Keyboard.

38) Furthermore, Defendant's website does not contain accessibility assistance that would direct a visually impaired person like the Plaintiff to someone who she can contact for assistance, questions, or concerns.

39) Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the website, in contravention of the ADA.

40) On information and belief, Defendant is, and at all times has been, aware of the barriers to its website which prevent individuals with disabilities who are visually impaired from comprehending the information within same, and is also aware of the need to provide access to all persons who visit its site.

41) Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this Complaint, such that this suit for declaratory judgment and injunctive relief is her only means to secure adequate and complete redress from Defendant's discriminatory practices in connection with use of its website.

42) Notice to Defendant is not required because of Defendant's failure to cure the violations.

43) Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

44) Plaintiff has retained the undersigned attorneys to represent her in this case, and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

45) Plaintiff realleges paragraphs 1 through 44 as if set forth fully herein.

46) Defendant owns and operates the https://www.alexandermcqueen.com/us website, and is a public accommodation subject to the ADA pursuant to 42 U.S.C. §12181(7)(E).

47) Defendant's website is inaccessible to persons with disabilities like the Plaintiff, who is visually impaired. Plaintiff was not able to enjoy full and equal access to the information and services that Defendant has made available to the public on its website, in violation of 42 U.S.C. §12101. *et seq*, and as prohibited by 42 U.S.C. §12182 *et seq*.

48) Defendant's website is not in compliance with the ADA.

49) Defendant has made no reasonable accommodation for Plaintiff's disability.

50) A cursory review of a portion of the Defendant's website revealed that the website is not accessible to persons like the Plaintiff that are visually impaired as required by law and for which there is no sufficient alternative on Defendant's website, including:

Applicable WCAG 2.0 Standard at Issue: *Standard 3.3.2 Labels or Instructions (Level A).*

Nature of the Violation: required by WCAG 2.0's *Standard 3.3.2 Labels or Instructions.*

Applicable WCAG 2.0 Standard at Issue: *Standard 2.4.3 Focus Order (Level A).*

Nature of the Violation: required by WCAG 2.0's *Standard 2.4.3 Focus Order.*

51) Due to Defendant's failure to provide an ADA compliant website, the Plaintiff has been injured since she has been denied full access to Defendant's website.

52) As a result, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to correct the inaccessibility that leads to discrimination against visually impaired persons.

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

A. A declaration that Defendant's website is in violation of the ADA;

B. An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

C. An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1] would lead to a page which would state

Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

D.      An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

E.      An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

F.       An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

G.      An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

H.      An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.       An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

J.         An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

K.         An award to Plaintiff of her reasonable attorney's fees, costs and expenses; and Such other and further relief as the Court deems just and equitable.


[1]

## COUNT II – TRESPASS

53)   Plaintiff realleges paragraphs 1 through 44 as if set forth herein.

54)   Defendant's website contains software analytics. Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

55)   Plaintiff never consented to and was unaware that Defendant's website was placing software on her computer.

56)   Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on her personal computer, which was done without her knowledge and consent.

57) Defendant's trespass has damaged Plaintiff by affecting the condition and value of her computer.

58) On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom right of the page called "Privacy Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

*1. Personal Data We May Collect About You*
*We will collect various types of personal data about you for the purposes described in this Policy, including:*
*Contact information (such as your name, birthday, nationality, email address, postal address, telephone number and any other personal data) that you provide by completing forms on the Website, including if you subscribe to our newsletter and register and create an account on the Website;*
*Details of any transactions made by you;*
*Personal data that may be contained in communications you send to us, for example to report a problem or to submit queries, concerns or comments regarding the Website or its content;*
*Information from surveys that we may, from time to time, conduct on the Website for research purposes, if you choose to respond to, or participate in, them;*
*Credit/debit card information, which is considered to be sensitive personal data in certain countries such as Mexico; and.*
*Personal information collected from third parties, such as data that you agree to share with us on publicly accessible social networks (e.g., Facebook, Instagram, etc.) and/or that we may collect from other publicly accessible databases.*
*You are under no obligation to provide any such information. Providing your personal data to us and YNAP (in particular, your personal details, your email, your address, your credit/debit card numbers and bank code and your telephone number) is necessary for processing your order for the purchase of products on the Website, supplying other services provided on the Website upon your request, or when your personal data is needed to fulfil obligations required by law or regulations. The refusal to provide us and YNAP with any personal data necessary for performing the above purposes may consequently prevent us or YNAP from processing your order for the purchase of products sold on the Website or fulfilling obligations required by law and other regulations. Therefore, failure to provide personal data may constitute, in some cases,*

*a legitimate and justified reason for not processing your order for the purchase of products sold on the Website or not providing the Website's services.*

*Disclosure of further personal data to us and YNAP other than that required for fulfilling legal or contractual obligations and to properly browse our services with necessary traffic data is, on the contrary, optional and does not have any effect on the use of the Website and of its services or on the purchase of products on the Website. We will inform you at every step whether disclosing your personal data to us and YNAP is required or optional by marking with an appropriate symbol (\*) the information that is required or data needed for the purchase of products and/or for the provision of requested services on the Website.*

*2. Minimum Age*

*Protecting the safety and privacy of children is very important to us. We will not knowingly collect or use personal data from anyone under the age of sixteen (16) years, or any other age limit set out by the law of his/her country of residence. By registering on the Website, you confirm that you have reached the age of majority in your country of residence.*

*3. Use Made of Your Personal Data*

*Whenever we process your personal data, we do so on the basis of a lawful "justification" (or legal basis) for processing. In the majority of cases, the processing of your personal data will be justified on one of the following bases:*

- *processing is necessary to perform a contract with you or take steps that you have requested in order to enter into a contract (e.g., sale contract);*
- *processing is necessary for us to comply with a legal obligation;*
- *processing is in our legitimate interests as a business, and our interests are not overridden by your interests, fundamental rights or freedoms. Our legitimate interests may include our interest in using customer and Website user personal data to conduct and develop our business activities (including by carrying out standard marketing activities) ,with current and potential customers and Website users; and in establishing, exercising or defending legal claims; or*
- *processing is based on your prior explicit consent, such as segmented and customized marketing activities.*

*4. Disclosure of Your Personal Data*

*We may disclose your personal data to any of our affiliate companies, or to our service providers who have a legitimate interest in receiving your personal data, specifically and exclusively in order to assist us in providing the services we offer, processing transactions, fulfilling requests for information, receiving and sending communications, updating marketing lists, analysing data, providing support services or in performing other tasks, from time to time. In particular, we share your personal data with E_Lite S.p.A., an Italian joint stock company (società per azioni) with registered office at via E. Marelli 2, 20139 - Milan, Italy, and with ContactLab France, a French corporation (société à responsabilité limitée) with registered office at 5 rue du Helder, 75009 Paris, France, which provide us with marketing campaign management services as a data processor.*

*For the avoidance of doubt, we will get your express opt-in consent before we share your personal data with any third party company other than Alexander McQueen and Kering for marketing purposes.*

*Your personal data will be accessible by authorized personnel of Kering, Alexander McQueen and affiliated companies, and service providers acting on our behalf on a need-to-know basis. Transfer of your personal data from your country of residence to third countries (notably to countries where we operate) will be involved; some of these countries are subject to a data protection adequacy decision of the European Commission, whereas others are not. To ensure the protection of your personal data is consistent with applicable law, such transfers outside the EEA will be made pursuant to the EU Model Clauses, the EU-US Privacy Shield certification, Binding Corporate Rules or other acceptable legal mechanisms of which you can request a copy via privacy@alexandermcqueen.com.*

*We may also share your personal data with third parties in connection with potential or actual sale or restructuring of our company or any of our assets, or those of any associated company, in which case personal data held by us about our users may be one of the transferred assets.*

*We will also respond to requests for personal data where required to do so by law, or when we believe that disclosure is necessary to protect our rights and/or comply with a judicial proceeding, court order, request from a regulator or any other legal process served on us.*

*5. Security*

*We have adopted security measures to protect personal data against accidental or unlawful destruction, accidental loss, alteration, unauthorized disclosure or access. For the best possible protection of your personal data outside the limits of our or YNAP's control, your device should be protected (such as by updated antivirus systems) and your internet service provider should take appropriate measures for the security of network data transmission (such as, for example, firewalls and anti-spam filtering).*

*While we take all reasonable steps to protect your personal data, we cannot guarantee that the personal data you disclose to us will be 100% secure, nor that any data breach will not occur. You accept the inherent security implications of dealing on-line over the Internet and will not hold Alexander McQueen, Kering or their processors responsible for any data breach unless it is due to our negligence.*

*6. Retention of Your Personal Data*

*Our general approach is to retain your personal data only for as long as required to fulfil the purposes for which it was collected. We generally retain your personal data for three years from the end of our relationship or from the last contact from you, unless local law requires otherwise. However, in some circumstances we may retain personal data for longer periods of time, for instance where we are required to do so in accordance with legal, tax and accounting requirements.*

*In specific circumstances we may also retain your personal data for longer periods of time corresponding to the applicable statute of limitations so that we have an accurate record of your dealings with us in the event of any complaints or challenges.*

*7. Your Rights*

*You have the following rights with respect to your personal data:*

- *Right to withdraw consent - where applicable, you have the right to withdraw your consent at any time. For example, if you wish to opt-out of receiving electronic marketing communications, you can change your settings in your account on the Website, use the 'unsubscribe' link provided in our emails or text the STOP number in our SMS, or otherwise contact us directly and we will stop sending you communications.*
- *Right of access, rectification and erasure - you have the right to request access to and obtain a copy of any of your personal data that we may hold, to request correction of any inaccurate data relating to you and to request the deletion of your personal data under certain circumstances. You can see and update most of this data yourself online, or by contacting directly privacy@alexandermcqueen.com.*
- *Right of data portability - Under certain conditions, you have the right to receive all such personal data which you have provided to us in a structured, commonly used and machine-readable format, and also to require us to transmit it to another controller where this is technically feasible.*
- *Right to restriction of processing - you have the right to restrict our processing of your personal data where:*
  *- you contest the accuracy of the personal data until we have taken sufficient steps to correct or verify its accuracy;*
  *- the processing is unlawful but you do not want us to erase the data;*
  *- we no longer need your personal data for the purposes of the processing, but you require such data for the establishment, exercise or defence of legal claims; or*
  *- you have objected to processing justified on legitimate interest grounds (see below) pending verification as to whether we have overriding compelling legitimate grounds to continue processing.*
  *Where personal data is subject to restriction in this way, we will only process it with your consent or for the establishment, exercise or defence of legal claims, in accordance with local legislation.*
- *Right to object to processing justified on legitimate interest grounds - where we are relying upon legitimate interest to process personal data, then you have the right to object to that processing. If you object, we must stop that processing unless we can either demonstrate compelling legitimate grounds for the processing that override your interests, rights and freedoms or where we need to process the data for the establishment, exercise or defence of legal claims. Where we rely upon legitimate interest as a justification for processing we believe that we can demonstrate such compelling legitimate grounds, but we will consider each case on an individual basis.*
- *Right to object to processing for marketing purposes - - where we process personal data for direct marketing purposes, then you have the right to object to that processing at any time.*

59) Due to Plaintiff's disability, she could not understand Defendant's website and she could not give informed consent to Defendant's installation of data and information tracking software on her computer. Defendant also could not give informed consent to Defendant's collection of her browsing history and the placement of analytics on her computer.

60) Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from her computer and determine which programs should be installed and operated on her computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

### Request for Jury Trial

61) Plaintiff requests a jury trial.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email:info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  305-824-9800

Facsimile: 305-824-3868
Email: lr1208@live.com
By: /s/
LYDIA C. QUESADA, ESQ., of Counsel
FL BAR NO.: 191647